AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Eastern District of Missouri

| | |
|---|---|
| **In the Matter of the Search of** | ) |
| | ) |
| | )    Case No. 4:23 MJ 9050 (RHH) |
| **The premises located at 1710 Keelen Drive, St. Louis,** | ) |
| **MO 63135,** further described as a single-family residence | ) SUBMITTED TO THE COURT AND |
| and is located on the south side of Keelen Drive and the | )SIGNED BY RELIABLE ELECTRONIC MEANS |
| front door faces north. The numeric number of the residence | ) |
| is clearly marked in black numbers on the west side of the | ) |
| white front door. The residence has a combination of a red | ) |
| brick and white siding exterior. | ) |

## APPLICATION FOR A SEARCH WARRANT

I,  JASON DIETL , a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

**The premises located at 1710 Keelen Drive, St. Louis, MO 63135 as fully described above,**

located in the _____EASTERN_____ District of _____MISSOURI_____ , there is now concealed

### SEE ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ✓ evidence of a crime;
- ✓ contraband, fruits of crime, or other items illegally possessed;
- ✓ property designed for use, intended for use, or used in committing a crime;
- ❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., §§ 846, 841(a)(1) | Conspiracy to possess with intent to distribute controlled substance(s) |

The application is based on these facts:
  SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.
- ✓ Continued on the attached sheet.
- ❏ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**I state under the penalty of perjury that the foregoing is true and correct.**

_____
Jason Dietl, Task Force Officer
Drug Enforcement Administration
*Printed name and title*

**Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.**
Date: ___May 8, 2023_____

_____
*Judge's signature*

City and State: __St. Louis, MO_____

Rodney H. Holmes,  U.S. Magistrate Judge
*Printed name and title*

AUSA – STEPHEN CASEY

**ATTACHMENT B**

*Property to be seized*

1.　　　All records and information relating violations of Title 21, U.S.C. §§ 841(a)(1), 846 (possession with intent to distribute narcotics and conspiracy to distribute narcotics), that constitutes fruits, evidence and instrumentalities of violations those violations involving HARRIS, PETON, OWENS including:

　　　　a.　Controlled substances;

　　　　b.　Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

　　　　c.　Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

　　　　d.　Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service;

　　　　e.　Digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room and/or digital communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

　　　　f.　Photographs, in particular photographs of co-conspirators, assets and/or controlled substances;

　　　　g.　United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other

documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

h.  Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

i.  Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere;

j.  Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys; and

k.  Firearms and/or weapons.

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Jason Dietl, being first duly sworn, hereby depose and state as follows:

INTRODUCTION

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a warrant to search **1710 Keelen Drive  St. Louis, MO 63135** ("**Target**

**Location**") further described below and depicted in Attachment A, for the things described in

Attachment B.

2.      I am a Shrewsbury Police Department Officer assigned to the Drug Enforcement

Administration as an investigative or law enforcement officer of the United States within the

meaning of Title 18, United States Code, § 2510(7), and am empowered by law to conduct

investigations of and make arrests for offenses enumerated in Title 18, United States Code § 2516.

3.      I have been a Police Officer for 11 years and assigned to the Drug Enforcement

Administration as a Task Force Officer since August 2018.  I have completed the Eastern Missouri

Police Academy and other law enforcement courses of instruction which focused on the

investigation of persons involved in the manufacture, transportation, distribution, and sale of

controlled substances, as well as the methods of laundering the proceeds of these illegal activities.

I am currently assigned to the Financial Investigations Group (FIG) at the DEA St. Louis Division

Office (SLD).

4.      During my law enforcement career, I have participated in multiple investigations

involving the possession, manufacture and distribution of controlled substances while detached to

the DEA.  Those investigations have included the use of surveillance of persons involved in the

possession and distribution of controlled substances, and the execution of arrest and search

warrants for persons and places connected with the possession, manufacture and distribution of

1

controlled substances. My specialized training has included, but is not limited to investigation of the manufacture, possession and distribution of controlled substance listed within the Controlled Substance Act, executing search and arrest warrants involving drug offenses, gathering drug and non-drug evidence, under cover assignments, supervision and utilization of informants, narcotic smuggling, and money laundering.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## LOCATION TO BE SEARCHED

6.      This affidavit is submitted in support of an application for the issuance of a search warrant for the premises at the following location: **1710 Keelen Drive  St. Louis, MO 63135** ("**Target Location**"). The **Target Location** is a single family residence in St. Louis County, Missouri. The residence is located on the south side of Keelen Drive and the front door faces north. The numeric number of the residence is clearly marked in black numbers on the west side of the white front door. The residence has a combination of a red brick and white siding exterior. A photograph of the **Target Location** is attached hereto as Attachment A.

## PROBABLE CAUSE

7.      In June 2020, DEA-St. Louis Division Group 28 initiated an investigation into GRIFFIN drug-trafficking organization (DTO) which is distributing large quantities of fentanyl, heroin and crystal methamphetamine in the St. Louis, Mo area. The investigation established that Stephen GRIFFIN was the head of the DTO. GRIFFIN established a large network of retail distributors and facilitators in order to engage and maintain his DTO's sale of narcotics. Jovon

2

HARRIS was identified as one of GRIFFIN's distributors and facilitators. On October 13, 2021, HARRIS was charged by a grand jury in the Eastern District of Missouri (Case No. 4:21 CR 554) with drug trafficking fentanyl and methamphetamine and being a felon in possession of a firearm. An arrest warrant was issued for HARRIS' arrest.

8.      On May 8, 2023, investigators with USMS executed the federal arrest warrant for HARRIS at the **Target Location**. Investigators identified a black GMC Yukon with Missouri license plate ZH5P2S parked in the driveway. The USMS identified this vehicle as being utilized by HARRIS. USMS approached **Target Location**, knocked, and announced police presence. After announcing their presence, investigators heard subjects inside of the residence moving around and causing noise. After approximately four minutes, a subject identified as Errol PEYTON exited the front door of the residence. A couple minutes later, a second subject, identified as Domonick OWENS exited the front door. OWENS gave the USMS consent to search the **Target Location**. During the search of the **Target Location**, members of the USMS observed: two AR-15 firearms, a clear plastic baggie containing suspected fentanyl filled capsules, a digital scale on the kitchen table, and a clear plastic baggie containing suspected ecstasy pills in an open kitchen cabinet. During the search of the attached garage, members of the USMS located three duffle bags in a crawl space. In order to clear the crawl space, they removed the duffle from the location. Two of the duffle bags were already opened and they observed blenders, capsules and other drug paraphernalia inside. Based on the training and experience of the investigative team, investigators know it is common for narcotics traffickers to use blenders, capsules and other drug paraphernalia to distribute narcotics.

9.    Members of the USMS continued their search of the **Target Location** in search of HARRIS. While investigators were clearing the basement, they located HARRIS wrapped up inside of a large rug.

10.    After the apprehension of HARRIS, all investigators exited the **Target Location** and secured the **Target Location** in anticipation of a court authorized search warrant. I believe a search of the **target location** will result in the discovery and seizure of various items utilized in an ongoing conspiracy to distribute fentanyl in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## BACKGROUND AND TRAINING

11.    As part of my experience and training as a federal law enforcement officer, and that of other agents and police officers on the investigative team, we have accumulated information and training in the areas of narcotics based economic crime.  I have had experience, as have other members of the investigating team, in interviewing defendants, witnesses, informants and others who have experience in the gathering, spending, converting, transporting, distributing and concealing of proceeds of narcotics trafficking.  Based upon my and the investigating teams experience and our participation in other pending and completed controlled substance and/or financial investigations involving ongoing, extensive cocaine distribution conspiracies involving large amounts of controlled substances and money, I know the following:

a.    It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in their residence or other buildings under their control.

b.    Drug traffickers frequently keep near at hand, in their residence or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of drugs. These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

c.      Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Drug traffickers commonly "front" (provide drugs on consignment) controlled substances to their clients. The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their residence or in other buildings under their control.

d.      Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, receipts for telephone purchase/service; cellular telephones; computers capable of e-mail communication; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with persons known to traffic in controlled substances or to facilitate such trafficking. These records are maintained where drug traffickers have ready access to them, specifically, in their residence or in other buildings under their control.

e.      Drug traffickers take or cause to be taken photographs of them, their associates, their property and their product. These traffickers frequently maintain these photographs in their residence or other buildings under their control.

f.      Persons involved in large-scale drug trafficking conceal in their residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances.

g.      When drug traffickers amass large proceeds from the sale of drugs that the drug traffickers attempt to legitimize these profits. I know that to accomplish these goals, drug

5

traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts.  They maintain record of these transactions in their residence or other buildings under their control.

  h.  Evidence of occupancy and residence including, but not limited to utility and telephone bills, canceled envelopes, rental or lease agreements, and keys, is relevant evidence in drug prosecutions.

  i.  Drug traffickers frequently possess firearms and/or other weapons in their residence or other buildings under their control to protect their drugs and/or United States currency.

  j.  Drug traffickers frequently possess safes and/or other storage devices in their residence or other buildings under their control to protect their drugs and/or United States currency.

  k.  Fentanyl, heroin and methamphetamine are not commonly manufactured within the State of Missouri.  It is common for drug traffickers to travel to major distribution centers to purchase drugs and/or to arrange for its distribution elsewhere in the United States.  After purchasing drugs, these drug traffickers will transport or cause to be transported, drugs to the areas in which they will distribute the drugs.  The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers.  Records of their travel are frequently kept in their residence or other buildings under their control.

CONCLUSION

  12.  Based upon the preceding information, I believe HARRIS, OWENS, PEYTON, and others are distributing fentanyl in violation of Title 21, United States Code, Sections 841(a)(1) and 846. I further believe that the aforementioned **Target Location** is a "stash house" utilized by

6

the subjects to distribute and store fentanyl.  Accordingly, my team and I believe that controlled substances, drug proceeds, firearms, and/or documents evidencing participation in drug trafficking will be found at the aforementioned **Target Location**.

      13.     Finally, investigators know that fentanyl is a dangerous substance. Fentanyl residing in a residence can be potentially dangerous to anyone entering the Target Location.

     I state under the penalty of perjury that the foregoing is true and correct.

Jason Dietl
Task Force Officer, DEA

Sworn to, attested to, or affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 this   8th   day of May, 2023.

RODNEY H. HOLMES
United States Magistrate Judge
Eastern District of Missouri

7

### *Attachment A*

### Target Location

The premises located at **1710 Keelen Drive St. Louis, MO 63135** is further described as single-family residence in St. Louis County, MO. The residence numbers are located to the right of the front door.



8

**ATTACHMENT B**

*Property to be seized*

1.     All records and information relating violations of Title 21, U.S.C. §§ 841(a)(1), 846 (possession with intent to distribute narcotics and conspiracy to distribute narcotics), that constitutes fruits, evidence and instrumentalities of violations those violations involving HARRIS, PETON, OWENS including:

     a. Controlled substances;

     b. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

     c. Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

     d. Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service;

     e. Digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room and/or digital communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

     f. Photographs, in particular photographs of co-conspirators, assets and/or controlled substances;

     g. United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other

documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

h.  Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

i.  Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere;

j.  Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys; and

k.  Firearms and/or weapons.

10